# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

JENNIFER LOMBARDY,                )
                                  )
Plaintiff,                        )
                                  )
vs.                               )     CAUSE NO. 1:12-CV-210
                                  )
NORFOLK SOUTHERN                  )
RAILWAY CO.,                      )
                                  )
Defendant.                        )

## OPINION AND ORDER

This matter is before the Court on the Norfolk Southern Railway Company's Motion for Partial Summary Judgment, filed by Defendant, Norfolk Southern Railway Company, on September 4, 2013 (DE #19). For the reasons set forth below, the motion (DE #19) is **GRANTED**. Plaintiff's allegations that Norfolk failed to adequately train, educate, instruct, supervise, qualify, and test the engineer operating the locomotive, and failed to adequately train, instruct, and supervise the train crew (First Am. Compl. (DE #15), ¶ 14(d), (k)-(m), (q)), are hereby **DISMISSED WITH PREJUDICE**. The remaining claims in the first amended complaint **REMAIN PENDING**.

BACKGROUND

Plaintiff, Jennifer Lombardy, who worked as a conductor for Defendant, Norfolk Southern Railway Company (hereinafter "Norfolk"), claims that on December 6, 2009, she sustained injuries

during an abrupt stop while riding on the corner of a grain hopper car. She alleges, *inter alia*, that Norfolk Southern failed to adequately train, educate, instruct, supervise, qualify, and test the engineer operating the locomotive, and failed to adequately train, instruct, and supervise the train crew. (*See* First Am. Compl. (DE #15), ¶ 14(d), (k)-(m), (q)).

In the instant motion for partial summary judgment, Norfolk argues that Plaintiff's claims for inadequate training, education, instruction, supervision, and qualification fail as a matter of law, as precluded by federal regulations promulgated pursuant to the Federal Railroad Safety Act, 49 U.S.C. §§ 20101, *et seq.* ("FRSA"). In her brief in opposition, Plaintiff argues that her FELA failure to properly train claim is not preempted by the FRSA. (DE #22.) Norfolk filed a reply brief on October 24, 2013 (DE #25), as well as a supplemental designation of evidence in support of its motion for partial summary judgment. (DE #26.) This motion is fully briefed and ripe for adjudication.

Undisputed Facts

The undisputed facts in this case are fairly straightforward. Plaintiff worked as a conductor for Norfolk Southern. On December 6, 2009, she and Engineer Eric Douthitt were working at a grain facility (Andersons) in Dunkirk, moving empty rail cars from a

siding track to several tracks within the grain facility. (Lombardy Dep., pp. 54, 57.) Plaintiff was riding on the corner of a grain hopper car during a "shove move" into Andersons. (*Id.*, p. 80.) Plaintiff's supervisor, Assistant Trainmaster Eric Goodman, was riding on the opposite corner of the car. (*Id.*)

Plaintiff alleges that the engine's radio (which she was using to communicate with the engineer), failed to work properly, and when that happened, Engineer Douthitt "didn't stop [the train] fast enough." (*Id.*, pp. 101-02.) Then, when Engineer Douthitt did stop the train, he stopped "abrupt[ly]," which Plaintiff claims caused her to injure her knee, back, and neck. (*Id.*, p. 102.)

Engineer Douthitt admits he was having some difficulty hearing Plaintiff on the radio during the shove. (Douthitt Dep., p. 29.) Assistant Trainmaster Goodman, who was riding the shove move with Plaintiff and listening on his radio, admits that when Plaintiff was trying to give Engineer Douthitt the car counts, the "communication wasn't clear." (Fulk Report (Ex. B), pp. 4-5; Goodman Dep., pp. 61-62.) Douthitt told Lombardy that his radio did not work, and he could not hear her. (Fulk Report, p. 4; Lombardy Dep., p. 101.)

Before Lombardy's injury, there were radio problems earlier in the shove. (Fulk Report, pp. 6-8; Goodman Dep., p. 62.) Plaintiff's liability expert, Colon Fulk, opines that since the

locomotive radio failed once before, Goodman should not have allowed the train to be moved until the communication issue had been corrected. (Fulk Report, pp. 6-9.) Fulk opines Goodman violated Norfolk Southern General Regulation 1(b), which requires that "[i]n case of doubt or uncertainty, the safe course must be taken." (Fulk Report, p. 7.) Fulk opines that Douthitt and Goodman violated several CRF rules, and ultimately, that Douthitt acted negligently by continuing the shove move while receiving broken radio transmissions, in violation of Norfolk Southern Operating Rule 509(c) and 49 C.F.R. 220.45. (Fulk Report, pp. 10-11.)[1] Additionally, Fulk believes Goodman did not have proper knowledge of the Federal Radio Regulations. (Fulk Supp. Report (Ex. C), p. 1.) Goodman testified during his deposition that he would not deem a radio defective if it worked part-time. (Goodman Dep., p. 28.) It is Fulk's opinion that Goodman's lack of knowledge of the regulations resulted in his inability to properly train the employees he supervised, who then also lacked proper knowledge of the regulations. (Fulk Supp. Report, pp. 1, 4.)

Plaintiff concedes that she thought she received "good

---

[1] 49 C.F.R. 220.49 requires that when a radio communication is used in connection with a shove, the movement should stop in one-half the remaining distance unless additional instructions are received, and if the instructions are not understood, the movement should be stopped immediately. 49 C.F.R. 220.49. Norfolk Southern Operating Rule 509 similarly requires that if the instructions are not understood or continuous radio contact is not maintained, the movement should be stopped immediately.

training" from Norfolk when she was hired, and when she was qualifying as a conductor. (Lombardy Dep., pp. 62-63.) G. Chris Brasher, Assistant Vice President of Operating Rules of Norfolk, filed a declaration and supplemental declaration with the Court. (DE #20-2 and DE #25-4). Brasher stated Norfolk filed with the Federal Railroad Administration ("FRA") its code of operating rules, timetables, timetable special instructions, and amendments within 30 days after they were issued, as required by 49 C.F.R. § 217.7, and has a written program for providing instruction to its employees on the meaning and application of its operating rules, as required by 49 C.F.R. §217.11. (Brasher Decl., ¶¶ 3,6.) Additionally, Norfolk's written program for certifying the qualifications of locomotive engineers has been filed with and approved by the FRA in accordance with 49 C.F.R. § 240.103. (*Id.* ¶ 5.)

Plaintiff, Engineer Douthitt, and Assistant Goodman all received training on Norfolk's safety and operating rules, and Engineer Douthitt was a qualified locomotive engineer. (Brasher Dec., ¶¶ 8-10.) Additionally, Norfolk has a written program for conducting operational tests and inspections to determine employee's compliance with rules, and Engineer Douthitt and Plaintiff were both tested and inspected under, and in accordance with, Norfolk's written policy. (*Id.* ¶¶ 11, 13-15, 18.) Assistant Goodman was also a qualified railroad testing officer. (*Id.* ¶ 10.)

Additionally, Douthitt and Goodman both received training on Norfolk's safety and operating rules, including instruction on the proper use of radio communication. (Brasher Supp. Dec. ¶¶ 4-5.)

Norfolk also conducted six month reviews of its program of tests and inspections, and quarterly reviews of the results and data. (*Id.* ¶ 16.) Summaries of the tests and inspections are maintained at its system headquarters and each division headquarters. (*Id.* ¶¶ 16-17.)

DISCUSSION

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant must support its assertion that a fact is genuinely disputed by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect* the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"A party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley Country REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 955 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof

at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.


Are Plaintiff's Claims for Negligent Training, Education, Instruction, Supervision, and Qualification Precluded?

Norfolk argues that Plaintiff's claims for negligent training, education, instruction, supervision, and qualification are precluded by the Federal Railroad Safety Act ("FRSA"). 49 U.S.C. §§ 20101, *et seq*.

The Federal Employers' Liability Act ("FELA") is a federal statute that gives a railroad employee the right to sue his employer in state or federal court for "such injury . . . resulting in whole or in part from the negligence" of the railroad or its employees. 45 U.S.C. § 51; *see Schadel v. Iowa Interstate R.R.*, 381 F.3d 671, 674-75 (7th Cir. 2004). Thus, the "FELA imposes on railroads a general duty to provide a safe workplace." *McGinn v. Burlington N.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996). The standard is a relaxed one under FELA, to prove that a railroad breached its duty, a "plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm

[and] then show that this breach played any part, even the slightest, in producing the injury." *Id.* at 300.

Congress passed the Federal Rail Safety Act of 1970 ("FRSA") to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. "The FRSA also advanced the goal of national uniformity of regulation because one of its provisions expressly preempts state laws regulating rail safety." *Burlington Northern and Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 795 (7th Cir. 1999); 49 U.S.C. § 20106. The preemption clause provides that states may regulate railroad safety "until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement . . . ." 49 U.S.C. § 20106(a)(2).

Norfolk argues that in this case, Plaintiff's claims for negligent training, education, instruction, supervision, and qualification, are precluded by the FRSA. It points to the regulations issued by the Secretary of Transportation, arguing it has issued comprehensive regulations covering the subject of training, instruction, education, qualification, and supervision of railroad employees. (Def.'s Mem. In Support, DE #20, p. 6.) For example, the Secretary promulgated Part 240 of the Code of Federal Regulations "to ensure that only qualified persons operate a locomotive or train." 49 C.F.R. § 240.1(a). Part 240 specifies "standards for the eligibility, training, testing, certification

and monitoring of all locomotive engineers." 49 C.F.R. § 240.1(b). The regulations detail how a railroad company must obtain FRA approval of its engineer certification program, the criteria and methodology to be used in selecting supervisors for persons seeking certification, and for continuing education, testing, training, and monitoring of performance. 49 C.F.R. §§ 240.1-240.411.

The Secretary also promulgated Part 217, requiring railroads to file their operating rules, timetables, and timetable special instructions and to periodically instruct its employees on the meaning and application of the operating rules. 49 C.F.R. §§ 217.7, 217.11. Part 217 also requires railroads to periodically conduct operational tests and inspections, in accordance with the written program, to determine the extent of employees' compliance with its operating rules, timetables, and timetable special instructions. 49 C.F.R. § 217.9. The railroads must make its records concerning the tests and inspections available for review, and prepare and retain copies of annual summaries of operational tests and inspections. *Id.* The regulations afford the FRA the authority to disapprove (and require the railroad to revise) the program. *Id.*

In its memorandum in support, Norfolk cites a slew of cases for the principal that "courts routinely hold that these federal regulations cover the subject of the training of train crews, and, therefore, preempt or preclude any claim of inadequate training,

10

education, instruction, or qualification." (DE #20, p. 7.) *See,*
*e.g., Union Pacific R.R. Co. v. California Pub. Utilities Comm'n*,
346 F.3d 851, 868 (9th Cir. 2003) (quotation omitted) (finding
where plaintiff argued railroad employees needed better training,
that "federal training regulations do substantially subsume the
subject of employee training," and ruling state regulation
mandating training for railroad employees was preempted under the
FRSA); *Doyle*, 186 F.3d at 796-97 (finding state requirement that an
engineer be at the controls of the locomotive any time it moves
directly in conflict with a federal regulation, 49 C.F.R. § 240.7,
and thus the state requirement was "therefore preempted by the
federal regulations."); *Dowe v. Nat'l R.R. Passenger Corp.*, No. 01
C 5808, 2004 WL 887410, at *5 (N.D. Ill. Apr. 26, 2004) (finding
"federal law preempts state law regarding training of locomotive
engineers," but noting the "subtle" distinction that federal law
does not preempt state law regarding the imposition of safe
operating procedures).[2] Norfolk argues that Plaintiff's claim that
it negligently supervised the crew is "indistinguishable" from the
claim alleging negligent training, education, instruction, and
qualification. (DE #20, p. 8.) It points to the Court in *Kohn v.*
*Norfolk S. Corp.*, 3:96-CV-911, slip op. at 5 (N.D. Ind. Jan. 6,

---

[2]Norfolk also cites to two unpublished slip opinions,
attached as exhibits. *See Kirk v. Norfolk S. Ry. Co.*, No. 3:00-
CV-273, slip op. at 4-5 (N.D. Ind. Oct. 30, 2001); *Travis v.*
*Illinois Cent. R.R. Co.*, No. 3:98-CV-643BN, slip op. at 17-24
(S.D. Miss. Mar. 15, 2001).

1998), which stated:

> The defendant is completely correct that the
> assertions and claims with reference to allege[d]
> negligence in training, instruction and supervision
> of the train crew is preempted by federal law under
> the Federal Railroad Safety Act of 1970, as
> repealed and transferred to 49 U.S.C. 20101, et
> seq. The defendant is entitled to summary judgment
> as a matter of law with reference to that issue.

Norfolk then proceeds to set forth how Norfolk Southern complied with the allegedly preemptive regulations set forth in Parts 217 and 240, contending Plaintiff's claims for inadequate training, education, instruction, supervision, and qualification fail as a matter of law. Basically, Norfolk shows that it filed with the FRA its code of rules, it has a written program, they retain copies of the written program, Plaintiff, Engineer Douthitt, and Assistant Goodman all received training in accordance with their written program, and it has a written program for operational tests and inspections to determine employees' compliance with the rules, each were tested, and Goodman was a qualified railroad testing officer under 49 C.F.R. § 217.9(b). (Brasher Dec. ¶¶ 3, 5, 6, 8-12.) Thus, Norfolk argues Plaintiff's claims for inadequate training, education, instruction, supervision, and qualification fail as a matter of law.

In response, Plaintiff argues that Norfolk has failed to demonstrate that her failure to train claim conflicts with 49 C.F.R. 217.7, 217.9, 217.11, and 49 C.F.R. 240.1. (DE #22, p. 1.)

Additionally, Plaintiff argues that Norfolk also violated 49 C.F.R. 220.25, a Federal Regulation that required proper instruction concerning railroad radio usage. Plaintiff's liability expert, Colon Fulk, opines that Norfolk violated 49 C.F.R. 220.25, which requires:

> Each employee who a railroad authorizes to use a radio in connection with a railroad operation, shall be:
>
> (a) Provided with a copy of the railroad's operating rules governing the use of radio communication in a railroad operation;
>
> (b) Instructed in the proper use of radio communication as part of the program of instruction prescribed in § 217.11 of this chapter; and
>
> (c) Periodically tested under the operational testing requirements in § 217.9 of this chapter.

49 C.F.R. 220.25; Fulk Report, p. 1.)

Plaintiff's leading case citation is to *Norfolk Southern Railway Co. v. Zeagler*, 748 S.E.2d 846 (Ga. 2013), decided by the Supreme Court of Georgia, which is not binding upon this Court. (DE #22, p. 7.) Moreover, *Zeagler* is distinguishable. In *Zeagler*, the Supreme Court of Georgia considered whether the federal training regulations precluded the plaintiff's claim that the railroad failed to train him on how to avoid or mitigate injury in the event of a grade-crossing collision. In other words, whether the federal training regulations precluded a claim that the

13

railroad should have provided training on a subject that it did not cover. The *Zeagler* court found federal regulations at Parts 217 and 240 did not "require or prohibit safety training for conductors regarding grade-crossing accidents." *Id.* at 860. However, here, as pointed out by Norfolk, Plaintiff argues that a federal regulation, 49 C.F.C. § 220.25, *did* require Norfolk to train and test its employees under Part 217 on the use of radio communication. Yet, it is uncontested that Norfolk had operating rules, and Douthitt and Goodman each received training in them. (Brasher Dec., ¶¶ 9-10.) Norfolk instructs employees in the proper use of radio communication, as required by 49 C.F.R. § 220.25, as part of its written program under 49 C.F.R. § 217.11. (Brasher Supp. Dec. ¶ 3.) Douthitt and Goodman each received training pursuant to the written program, and as required by § 220.25, on the proper use of radio communication. (Brasher Supp. Dec. ¶¶ 4-5.) Indeed, Douthitt and Goodman both testified that they received training on radio rules. (Goodman Dep., pp. 7; Douthitt Dep., pp. 5-8.) Plaintiff also does not dispute that Douthitt was tested and inspected under, and in accordance with, Norfolk's written program, as required by 49 C.F.R. § 217.9(b), or that Goodman was a qualified railroad testing officer under 49 C.F.C. § 217.9(b). (Brasher Dec. ¶¶ 9-10, 14-15, 18.)

Plaintiff's argument that Norfolk violated 20 C.F.R. 220.25, requiring proper instruction in radio rules, is based purely on the

opinion of expert Fulk. Yet, Fulk's opinion is not based upon
Norfolk's training and testing programs under §§ 217.9 and 217.11,
but on what he perceives as Douthitt's and Goodman's violation, and
lack of knowledge, of certain radio rules. (Fulk Supp. Rep., pp.
1-7.) Fulk does not opine that Norfolk failed to conduct the
training and testing required under Part 217 by § 220.25, and
Plaintiff has not pointed the Court to any evidence in the record
that Norfolk failed to conduct the required training and testing.
This Court concurs with Norfolk that "[w]hat Mr. Fulk perceives as
Mr. Douthitt's and Mr. Goodman's perceived violation (or inadequate
knowledge) of certain radio rules is not the issue before the
court. The issue is whether Norfolk Southern provided the training
and testing required under the federal regulations." (DE #25, p.
11.) And here, based upon the undisputed facts, Norfolk did
provide the required federal regulations training and testing.
Plaintiff cannot challenge the sufficiency of the regulations in
Parts 217 and 240. As the Ninth Circuit held, in addressing a very
similar argument as the one propounded by Plaintiff:

> CPUC does not dispute that the federal regulations
> require the Railroads to conduct some training, but
> instead insists that the current training is not
> adequate. It contends that railroad employees
> needed better training, "especially at rail
> segments which have historically high accident
> rates or particularly demanding operational
> characteristics." Because the federal regulations
> do not regulate the content of the Railroads'
> training program and randomly test employees, CPUC
> argues that its [training] regulation has not been

covered by the FRA.

>This argument is unpersuasive.  It is clear that the federal regulations do "substantially subsume" the subject of employee training. *See Easterwood*, 507 U.S. at 664, 113 S.Ct. 1732.  To "ensure" that railroad employees understand the Railroads operating rules, section 217.1 states, "each railroad . . . shall periodically instruct each [] employee on the meaning and application of the railroad's operating rules in accordance with a written program . . . ." Section 240.123 requires specific training regarding continuing education for certified locomotive engineers.  While CPUC's regulations are more specific and stringent than the federal government's, they both mandate training on the Railroads' own internal operating rules for the same safety concerns.  We agree with the district court that CPUC's [training] regulation is preempted by the FRSA.

*Union Pac. R.R. Co. v. California Pub. Utilities Comm'n,* 346 F.3d 851, 868 (9th Cir. 2003).

This Court believes this case is governed by *Waymire v. Norfolk & Western Ry. Co.*, 218 F.3d 773 (7th Cir. 2000).  In *Waymire*, plaintiff, train conductor, sued defendant, railroad company, under the FELA, alleging the railroad company was negligent in allowing the train to travel at an unsafe speed and failed to install additional crossing warning devices, which caused or contributed to a train-truck accident that injured the plaintiff.  *Waymire*, 218 F.3d 773.  The Seventh Circuit held that the railroad could not be liable in a FELA negligence action because the complained of conduct conflicted with the FRSA and its regulations.  In reaching this result, the Seventh Circuit extended

the Supreme Court's holding in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993). In *Easterwood*, the plaintiff sued under state law, alleging that the railroad operated its train at an excessive speed and failed to maintain adequate warning devices at the crossing. The *Easterwood* Court found plaintiff's excessive speed claim was barred by the FRSA's preemption clause. In extending *Easterwood* as it relates to the FELA and FRSA (two federal statutes), the Seventh Circuit reasoned in *Waymire* that:

> We are persuaded by the Supreme Court's reasoning and find that in order to uphold FRSA's goal of uniformity we must strike the same result. In *Easterwood*, the train was operating within the FRSA prescribed 60 miles per hour speed limit, as was N&W's train in this case. It would thus seem absurd to reach a contrary conclusion in this case when the operation of both trains was identical and when the Supreme Court has already found that the conduct is not culpable negligence. . . We believe the former result to be the correct result in light of FRSA's goal of uniformity and the Supreme Court's holding in *Easterwood* and thus hold that Waymire's negligence claim based upon the speed of the train is superseded by FRSA and the regulations promulgated thereunder.

*Waymire*, 218 F.3d at 776 (citations omitted).[3] This Court recognizes that the *Waymire* holding that FELA negligence claims can be precluded when a railroad is in compliance with FRSA regulations

---

[3] Citing to an Illinois state case, *Myers v. Illinois Central R.R. Co.*, 753 N.E.2d 560, 565 (Ill. App. Ct. 2001), Plaintiff contends that the Seventh Circuit "wrongly decided" *Waymire*. (DE #22, p. 10.) This argument is not persuasive. The Seventh Circuit's decision in *Waymire* is binding precedent for this Court.

is not universally adopted.  *See Federal Preemption & Preclusion:*
*Why the Federal Railroad Safety Act Should Not Preclude the Federal*
*Employer's Liability Act*, 51 Loy. L. Rev. (Winter 2005) (discussing
cases).  Yet, most cases decided after *Easterwood* have held that
the preemptive and/or preclusive effect of federal railroad safety
regulations is applicable where the FRSA regulation "'substantially
subsume[s]' the subject matter of the suit." *Nickles v. Grand*
*Trunk Western R.R., Inc.*, 560 F.3d 426, 429 (6th Cir. 2009) (citing
*Easterwood*, 507 U.S. at 664).

As Judge Miller explained in finding a plaintiff's FELA claim
precluded by the FRSA:

> Even though *Waymire* involved speed and warning
> device claims, not crew training claims like Mr.
> Kirk's, the Seventh Circuit's conclusion in *Waymire*
> is applicable here: Given that the federal agency
> empowered by Congress to establish uniform,
> comprehensive federal safety standards . . . has
> promulgated such regulations, federal common law
> and statutes on these issues are necessarily
> displaced.  The regulations applicable to the
> training and certification of locomotive engineers
> and/or conductors specifically provide that they
> are intended to displace other laws and regulations
> . . . . .  The regulations are comprehensive and
> are intended to occupy the field . . . .  Assuming
> that [the plaintiff's allegations] would even
> amount to a "negligent failure to train" claim, any
> such claim would be preempted by FRSA and the
> applicable regulations.

*Kirk v. Norfolk S. Ry. Co.*, 3:00-CV-273, slip op. at 4-5 (N.D. Ind.
Oct. 30, 2001) (quotation omitted).

Similarly, here, Plaintiff's claims for negligent training,

education, instruction, supervision, and qualification are precluded by the FRSA. As discussed previously in this order, the Secretary of Transportation issued comprehensive regulations covering the subjects of training, instruction, education, qualification, and supervision of railroad employees (Parts 217 and 240) and it is undisputed that Norfolk complied with the federal operating and training rules.

To the extent that Plaintiff argues the FRSA regulations do not directly conflict with FELA, this argument fails. The Seventh Circuit has touched on this topic, finding the FRSA "preempts all state regulations aimed at the same safety concerns addressed by FRA regulations." *Doyle*, 186 F.3d at 796 (quoting *Burlington Northern R.R. v. Montana*, 880 F.2d 1104, 1106 (9th Cir. 1989)). Indeed, when the Secretary promulgates a regulation that "covers the subject matter of some state safety requirement, the state requirement must give way . . . even if there is no direct conflict." *Id.* at 796-97. "Otherwise a state law could be preempted only if there were an identical federal regulation, and, as we noted, *Easterwood* teaches that this is not so." *Id. at 796*. And in *Waymire*, the Seventh Circuit makes clear that claims brought under federal law should be treated the same as claims brought under state law for purposes of FRSA preclusion. *Waymire*, 218 F.3d 773.

Finally, Plaintiff raises the 2007 clarifying amendment to 49

U.S.C. § 20106, arguing her negligent training claim should not be precluded. Subsection (b) of 49 U.S.C. § 20106 states in pertinent part, that:

> (b) [C]larification regarding State law causes of action. –
> (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party – –

> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106(b). Plaintiff contends that 20106(b)(1) and (B) allow common law claims based on the allegation that a railroad has failed to follow a Federal Regulation, or its own operating rules. (DE #22, p. 10.) However, this section merely states that *a state law negligence action* is preempted where a FRSA regulation "'substantially subsume[s]' the subject matter of the suit." *Nickels*, 560 F.3d at 429 (citing *CSX Transp.*, 507 U.S. at 664). Whether a claim under FELA is precluded by FRSA poses a different question. To the extent Plaintiff cites 49 C.F.R. §§ 220.45, 220.49, and what Plaintiff has dubbed as Norfolk's "internal

operating rules that parallel 49 C.F.R. 220.45 and 220.49," to try to avoid preclusion under subsections (b)(A) and (b)(B), those regulations do not concern training. Even if Norfolk's operating rules regarding radio use could be construed as "created pursuant to a regulation or order issued by either of the Secretaries," 49 U.S.C. § 20106(b)(1)(B), these rules do not cover training, and Plaintiff has not contended that Norfolk violated any internal rules regarding training. (DE #22, pp. 10-11.)

The Court notes that nothing in this Order precludes Plaintiff from offering evidence at trial about whether Douthitt and Goodman violated certain radio rules during the shove operation at issue. The only claims that are barred by this decision are Plaintiff's claims that Norfolk failed to adequately train, educate, instruct, supervise, qualify, and test Engineer Douthitt, and failed to adequately train, instruct, and supervise the train crew.

CONCLUSION

For the reasons set forth below, the motion (DE #19) is **GRANTED**. Plaintiff's allegations that Norfolk failed to adequately train, educate, instruct, supervise, qualify, and test the engineer operating the locomotive, and failed to adequately train, instruct, and supervise the train crew (First Am. Compl. (DE #15), ¶ 14(d), (k)-(m), (q)), are hereby **DISMISSED WITH PREJUDICE**. The remaining

claims in the first amended complaint **REMAIN PENDING**.


**DATED: June 3, 2014**                    **/s/ RUDY LOZANO, Judge**
                                           **United States District**